DAVID PAQUIN (State Bar No. 196144)
Ocean View Law Group
315 11th Place
Manhattan Beacl., CA 90266
Telephone: (310) 328-5529
oceanviewlawgroup@gmail.com

Attorney for Defendant
ZAHARIA KIANA BARBER

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>ZAHARIA KIANA BARBER,<br><br>Defendant. | Case No.: 1:24-cr-00251-JLT-SKO-01<br><br>**DEFENDANT ZAHARIA BARBER'S**<br>**SENTENCING MEMORANDUM**<br><br>Date: October 06, 2025<br>Time: 9:00 am<br>Judge: Hon. Jennifer L. Thurston |

Defendant, Zaharia Barber, by and through his co counsel of record, David C. Paquin, hereby files this Sentencing Memorandum setting forth his arguments regarding the appropriate sentence in this case.

Dated: September 28, 2025   Respectfully submitted,

*/s/ David C. Paquin*

DAVID C. PAQUIN
Attorney for Defendant
ZAHARIA K. BARBER

DEFENDANT'S SENTENCING MEMORANDUM

## TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................1

II.   DISCUSSION ...................................................................................2

      A .   THE PLEA AGREEMENT ...................................................3

      B.    SENTENCING PURSUANT TO 18 U.S.C. § 3553, ET

          SEQ.......................................................................................3

      C.    THE COURT MAY IMPOSE A NON-GUIDELINE SENTENCE .......5

      D.    THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND

          THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

          FAVOR A NON CUSTODIAL SENTENCE ...............................6

          (1) MISS BARBER'S HISTORY AND CHARACTERISTICS ............6

          (2) BARBER HAD NO KNOWLEDGE OR INVOLVEMENT WITH

          THE FRAUD CHARGES IN THIS CASE ...................................9

          (3) COOPERATION EFFORTS.................................................10

          (4) THE INSTANT OFFENSE .................................................11

      E.    PROBATION AND CREDIT TIME SERVED CONSTITUTE A

          SIGNIFICANT DEPRIVATION OF LIBERTY AND ARE

          APPROPRIATE IN THIS CASE .................................................11

III.  CONCLUSION- DEFENSE SENTENCING REQUESTS ...............................13

DEFENDANT'S SENTENCING MEMORANDUM

# TABLE OF AUTHORITIES

Cases:

United States v. Booker, 543 U.S. 220 (2005) ...............................................3

United States v. Denardi, 892 F.2d 269, (3d Cir. 1989) ..................................5

United States v Simmons, 485 F. 3d 951, 953 (7th Cir. 2007) .........................5

Gall v United States, 552 U.S. 38 (2007) ..................................................... 11,12

United States v Knights, 534 U.S. 112, (2001) ...............................................11

Griffin v Wisconsin, 483 U.S. 868 (1987)......................................................11


Statutes

18 U.S.C. § 1956 (h) ..................................................................................1

18 U.S.C. § 3553 (a)..........................................................................3,4,5

18 U.S.C. § 3553 (a) (1)..............................................................................3,4

18 U.S.C. § 3553 (a) (2) ...............................................................................3

18 U.S.C. § 3553 (a) (3) ...............................................................................4

18 U.S.C. § 3553 (a) (6) ...............................................................................4

18 U.S.C. § 3553 (a) (7)................................................................................4

18 U.S.C. §3553(a) (2) (d)............................................................................12

18 U.S.C. § 3661 .........................................................................................4

Guidelines

U.S.S.G. § 1B1.11...............................................................................2

U.S.S.G. § 1B1.2(a)..............................................................................2

DEFENDANT'S SENTENCING MEMORANDUM

U.S.S.G. § 2B1.1 ...............................................................................................................2

U.S.S.G. § 2S1.1(a)(2).......................................................................................................3

U.S.S.G. § 2X1.1(a) ..........................................................................................................3

U.S.S.G. § 3B1.1(2)(a)........................................................................................................3

U.S.S.G. § 3E1.1(a) ............................................................................................................3

U.S.S.G. § 3E1.1(b) ............................................................................................................3

U.S.S.G. § 4C1.1(a) ............................................................................................................3

U.S.S.G. § 5H1.....................................................................................................................5

U.S.S.G. § 5B1.3..................................................................................................................11

iii

DEFENDANT'S SENTENCING MEMORANDUM

NOW COMES the Defendant Zaharia Kiana Barber, by and through her counsel-of-record David Paquin, and files this memorandum relating to the defendant's sentencing in this cause. Sentencing is presently set for October 6, 2025, at the hour of 9:00 a.m., before the Honorable Jennifer L. Thurston, United States District Judge.

## I. INTRODUCTION

Miss Barber is currently before this honorable court for sentencing following her guilty plea, taken on June 23, 2025, to Count 9 of an eleven Count Indictment in the above entitled action. Count 9 is a violation of 18 U.S.C. §1956 (h), commonly known as Money Laundering/Conspiracy. Miss Barber made multiple financial transactions at the direction and guidance of her co-defendant Seth Depiano, without whom, she did not otherwise possess the financial acumen or knowledge to accomplish. Although other co-conspirators were involved with the underlying fraud, Miss Barber had no knowledge of, or connection to these individuals or their activities. Further, Miss Barber never engaged in any of the fraudulent schemes that deprived victims of funds from the conspiracy. These facts are reflected in the charging documents, the plea agreement, as well as the probation and sentencing report.

Once contacted by law enforcement regarding the case, Miss Barber immediately retained counsel and arranged a proffer session. At her proffer, which was held in February of 2023, Miss Barber fully cooperated with the government, providing unfettered access to her bank accounts, home, computer and phone. Additionally, she agreed to turn over anything that the government deemed to be the proceeds of Depiano's criminal conduct. Specifically, properties in Ohio that are referenced in the Indictment and the PSR, which were not seized by the government for over a year.

Miss Barber, through counsel, made multiple good faith efforts to transfer these properties to the government throughout the pendency of this case.

The Probation Office, after considering both the sentencing factors enumerated at 18 U.S.C. §3553 (a) as well as the advisory guideline range as set forth in U.S.S.G. §1B1.11, along with Miss Barber's cooperation efforts, has made the recommendation of a low end custodial sentence from the advisory guideline range; the terms of which are contained in detail within U.S. Probation Officer Ross McQuivey's Probation Report, as dated 09/15/2025. Although the guideline range for Miss Barber is calculated at 18 to 24 months, the facts and circumstances surrounding this particular defendant do not warrant a custodial sentence. The defense respectfully disagrees with the Probation Department's recommendation of any guideline incarceration. Therefore, the defense's variance recommendation is for a complete mental health evaluation, to be followed by a sentence of a one (1) year period of supervised release, with additional terms and conditions as recommended in the PSR.

## II. DISCUSSION

### A.    THE PLEA AGREEMENT

Sentencing Factors and Guidelines Range:

As per the Plea Agreement, the parties agree that under the United States Sentencing Guidelines (Guidelines), based on their best estimates, the total offense level is 15, Miss Barber's criminal history category is I, based *on no criminal history*, and the sentencing range is 18-24 months.

The total offense level is calculated as follows:

1. Base offense level: **8** [USSG §1B1.2(a)]

2. Loss: **+16** [USSG §2B1.1]

3. Base Offense Level Total: **24** [USSG §2S1.1(a)(2) and USSG §2X1.1(a)]

4. Minimal Participant: **-4** [USSG §3B1.2(a)]

5. Adjusted offense level: **20** (Subtotal)

6. Acceptance of responsibility: **-2** [USSG §§3E1.1(a)]

7. Government Assistance: **-1** [USSG §§3E1.1(b)]

8. Chapter Four Adjustment: **-2** [USSG §§4C1.1(a) 1-10]

9. Total offense level: **15**

The parties agree that the calculations as above referenced are correct, and that the guidelines referred to herein are reasonable under the factual basis for the Plea. The parties also agree that the defense is free to argue for a downward variance as indicated.

**B .    SENTENCING PURSUANT TO 18 U.S.C. § 3553, ET SEQ.**

Since the January 12, 2005 Supreme Court decision in United States v. Booker 343 U.S. 220 (2005), the United States Sentencing Guidelines have become but merely one factor that a sentencing court may consider in fashioning a sentence that is reasonable.

In short, Booker resuscitated the discretion that the sentencing statute seemed to take away from district courts. Thus in the current scheme of things, the sentencing court must properly use the Guideline calculation as advisory, affording no greater weight than the other §3553(a) factors, consider all of the information before it in a fashion prior to the imposition of the Guidelines and then determine the proper sentence under all of the circumstances.

The primary directive in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2. Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. In determining the minimally sufficient sentence, §3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§3553 (a) (1));

2) "the kinds of sentences available" (§3553(a)(3));

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§3553(a)(6)); and

4) "the need to provide restitution to any victims of the offense." (§3553 (a) (7)

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation."

Under 18 U.S.C. §3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and

vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See U.S.S.G. §5H1.

In sum, in every case, a sentencing court must now consider all of the §3553(a) factors, not just the Guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the Guidelines conflict with other sentencing factors set forth in §3553(a), these statutory sentencing factors should generally trump the Guidelines. United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since ' 3553(a) requires a sentence be no greater than necessary to meet the purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within Guideline range)).

## C.    THE COURT MAY IMPOSE A NON-GUIDELINE SENTENCE

Counsel submits that the appropriateness of a non-Guideline sentence was, and is, contemplated by the Plea Agreement. A sentence outside of the applicable Guidelines range is reasonable so long as it conforms to the principles of §3553(a). United States v Simmons, 485 F. 3d 951, 953 (7th Cir. 2007). In this case all parties recognize that the Guidelines are advisory and not mandatory, and the Court can and should consider a sentence as recommended in the PSR, as well as the factors and circumstances referenced in this memorandum. Implicit in the Plea Agreement is the right of both the Government and Miss Barber to respectfully argue outside the parameters of the Sentencing range of 18 - 24 months. The defense vehemently disagrees with the U.S. Probation Office's recommendation that the low end of the guideline range should be imposed. As stated above, the defense is requesting that the Court impose a one (1) year term of supervised release, as

recommended, with an appropriate mental health treatment component as determined by the Probation Department.

As Miss Barber demonstrates in the sections below, the conduct that serves as a predicate for her conviction by her plea stand in direct contrast to her educational background, her work ethic, and her future potential. Additionally, Miss Barber's lack of any criminal history whatsoever, delicate mental health history and status, as well as her particular susceptibility to her Co-Defendant's dishonesty, along with her extensive cooperation efforts, create a combination of sentencing circumstances that merit this court's consideration.

**D.    THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT FAVOR A PROBATIONARY SENTENCE**

(1)    MISS BARBER'S HISTORY AND CHARACTERISTICS

Zaharia Barber was born on September 26, 1996, to the formal union between Malcom and Kenya Barber in Rock Hill, South Carolina. Zaharia grew up in the small community of Rock Hill, along with her parents and her seven siblings. She grew up in a close family, with her mother a fulltime homemaker, and her father a tenured postal employee. Although the family was never financially well off, they were able to provide a safe and stable home life for all of the Barber children. The Barber household always managed to provide adequate food, clothing, as well as a loving and supportive home environment. The Barbers, although disappointed in Zaharia's arrest, are willing to take her back into their home should that become necessary.

Zaharia has maintained a close and loving relationship with her siblings as well as her parents throughout her life, and generally speaks with them on a daily basis. Her parents and siblings all remain in Rock Hill, South Carolina, and are supportive of Zaharia. (Please see Exhibit "A") While growing up, Zaharia received good grades throughout her public schooling up to and including High School. After graduating High School, Zaharia then moved to Columbia to attend college at The University of South Carolina, where she earned her Bachelor's Degree in Hospitality Management in May of 2019. After graduation, Miss Barber then moved to Las Vegas where she began working in the Casino/Hotel Industry. Miss Barber, once she arrived in Nevada, enrolled in The University of Las Vegas where she ultimately earned a Digital Marketing Professional Certificate in September of 2022. (Please see Exhibit "B")

While living and working in Las Vegas, Miss Barber met her co-defendant Seth Depiano via an internet dating website. They both felt a legitimate connection, and their relationship progressed over time, and she eventually visited Depiano in federal custody. Over the course of their dating relationship, Depiano began to discuss his financial situation, and the reasons for his incarceration. Depiano told Miss Barber that he was innocent of his charges, and would like to involve her in his ongoing legitimate real estate business so that they could build a life together once he was released from custody. Although it may be unreasonable, under the totality of these circumstances, that Miss Barber would believe her new boyfriend, but this is exactly what happened. Zaharia had never had a boyfriend before Depiano, and she welcomed the attention and companionship. It should be noted that Miss Barber has a diagnosed history of mental health issues that help to explain her gullibility and naiveté regarding Depiano's stories to her.

As time progressed, Miss Barber became increasingly entangled in the financial conspiracy to launder money for Depiano. Interestingly, she never tried to hide any of her financial transactions

from any authorities, believing that they were all legal. At Depiano's direction, Zahria worked with multiple bankers and accountants, all of whom facilitated these financial transactions, which was further evidence to her that nothing was amiss. Moreover, Miss Barber knew that her communications with Depiano were always being recorded, and assumed that if there was anything illegal going on, law enforcement would know. Again, as incredible as this is to conceive of in hindsight, Zarhia believed her boyfriend.

This betrayal by Depiano has been the most humbling and terrifying ordeal in Zaharia Barber's young life. She has had to explain to her friends and family how she was involved in criminal activity for the only time in her life; and that she was in fact guilty of assisting Depiano. The disappointment that she saw in her parents' eyes when she told them about her arrest was the low point of her life. The upheaval these naive decisions have caused to her are beyond anything Zaharia Barber ever expected to face. This entire process has thrown Miss Barber into an increasingly downward mental health spiral, which needs immediate professional attention.

Miss Barber is truly embarrassed and remorseful for her part in any criminal conduct in this matter. Her behavior was irresponsible and contrary to the values that have guided her throughout her life. Even before her Plea Agreement, Miss Barber agreed to forfeit any profit she made/controlled by assisting Depiano in operating his fraudulent real estate schemes. Additionally, Zaharia has been diligently working to repair the relationships with her family and friends, as well as her employer and business associates, whose confidence and trust in Zaharia was damaged by her involvement in this case. She recently lost her "dream job" as a result of her change of plea in this case. Miss Barber feels shame for disappointing those closest to her, and is doing her best to display a renewed sense of responsibility to consciously make the right choices moving forward.

(2)    MISS BARBER HAD NO KNOWLEDGE OR INVOLVEMENT WITH THE
UNDERLYING FRAUD CHARGES IN THIS CASE

As outlined above, and in the PSR, Miss Barber was only involved in laundering money that was obtained by Depiano's scheme; Depiano tried to conceal illegal activity from Miss Barber at every opportunity. The government had thoroughly reviewed all contact by and between Depiano and Barber, and nowhere in their communications did investigators find that Miss Barber knew of the underlying illegal activity that was the actual source of the fraud at issue. Depiano never confided to Miss Barber that he was engaged in any criminal activity. In fact, Depiano insisted that his actions were all legal and above board. And as "unreasonable" as it may have been for Miss Barber to believe Depiano, she in fact did. Notably, Miss Barber is not a part of the most disturbing aspects of this indictment involving the complex scheme to defraud. Miss Barber's background, training and life experience are not a sufficient prerequisite for her to engage in the complex fraud scheme(s) that were initiated by her codefendants; she was simply a convenient conduit to further their conspiracy.

(3)    COOPERATION EFFORTS

As discussed above, and referenced in the PSR, Miss Barber has fully cooperated with all law enforcement efforts to locate and turn over any and all proceeds from Depiano's scheme. The Court should take this into account when considering the downward departure requested herein

(4)    THE INSTANT OFFENSE

The conduct that constitutes the instant offense is detailed in the PSR at paragraphs 18 – 25, as well as in Section IV of the Plea Agreement. In essence, Miss Barber provided her personal and financial information to members of the Conspiracy, opened bank accounts and purchased properties, as well as used money at various casinos to disguise the proceeds from Depiano's fraudulent real estate dealings. As referenced in the PSR Miss Barber was responsible for laundering between $1.5

and $2.5 million by the government's best estimates. Of that money, Miss Barber only received what amounted to a tiny fraction of these funds (approximately $25,000.00) for "living expenses." Miss Barber sincerely believed that she was helping Depiano put together their financial "nest egg" that they would use to live their lives together with after marriage.

E.    SUPERVISED RELEASE AND/OR HOUSE ARREST CONSTITUTE A SIGNIFICANT DEPRIVATION OF LIBERTY AND ARE APPROPRIATE IN THIS CASE

In United States v Gall, the Supreme Court affirmed the district court's probationary sentence where the sentencing range was 30 – 37 months imprisonment. The Court specifically rejected the idea that extraordinary circumstances must justify a sentence outside the properly calculated sentencing range. In upholding the district court's sentence for probation, the Court stated:

We recognize that custodial sentences are qualitatively more severe

than probationary sentences of equivalent terms. Offenders on probation

are nonetheless subject to several standard conditions that substantially

restrict their liberty. See United States v Knights, 534 U.S. 112, 119 (2001)

("Inherent in the very nature of probation is that probationers 'do not

enjoy the absolute liberty to which every citizen is entitled' " (quoting

Griffin v Wisconsin, 483 U.S. 868, 874 (1987))). [footnote omitted]

Probationers may not leave the judicial district, move, or change jobs

without notifying, and in some cases receiving permission from their

probation officer or the court. They must report regularly to their probation

officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG §5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court.

Gall v United States, 552 U.S. 38 (2007).

If the court should determine that a downward departure from the guidelines is warranted, Miss Barber can be easily monitored through the probation department. Additionally, it should be noted that there is an available, stable home environment where the Defendant could successfully serve an appropriate home detention sentence if it is determined that this is appropriate. Therefore, Miss Barber respectfully requests the court to consider home detention/probation as a viable sentencing alternative. As part of this recommended sentence, Miss Barber additionally requests a comprehensive mental health evaluation and treatment plan, which this court has the authority to Order under § 3553(a)(2)(d). If the court imposes a sentence of home detention (for a time as deemed appropriate) and a one (1) year period of supervised release, as recommended by the Probation Department, then Miss Barber will be subject to various restrictions upon her liberty and her behavior will be monitored through the probation department.

As referenced throughout this memorandum, Miss Barber has documented mental health issues, which have been dramatically exacerbated trough this court process. These same mental health disorders that made her particularly susceptible to the instant offense, have also made her increasingly unable to comply with this court's Orders. Should this Honorable Court decide that a departure is warranted, Probation will be able to assist in assuring that Miss Barber gets the mental health attention that she needs. A sentence of Incarceration, as recommended in the PSR, simply will not provide that

opportunity to Miss Barber that she desperately needs, and is not appropriate to meet the stated goals of sentencing.

## IV. CONCLUSION- DEFENSE SENTENCING REQUESTS

Thankfully, the court is no longer bound by the strict constraints of the Guidelines, but by reason and sensibility to impose a sentence not greater than necessary to carry out the fundamental purpose of sentencing: to contribute, along with crime prevention initiatives, respect for the law and the maintenance of a just, peaceful society. Considering the factors and issues raised on Defendant's behalf in this Sentencing Memorandum, this Honorable Court is urged to impose a sentence of a one (1) year period of supervised release with thorough inpatient/outpatient (as deemed necessary) mental health evaluation and treatment; or in the alternative, to impose an initial period of home detention as deemed appropri te, to be coordinated with aforementioned mental health services.

Respectfully submitted,

DATED:   September 28, 2025                    Respectfully submitted,


                                              /s/ David C. Paquin


                                              DAVID C. PAQUIN
                                              Attorney for Defendant
                                              ZAHARIA BARBER

Docusign Envelope ID: A3F7B90C-97F5-4732-AF22-019D6E8BBE2A

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years of age and not a party to the within entitled action; my business address is 315 11th Place, Manhattan Beach, CA 90266. I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On 09-29-25, I served the foregoing via hand delivery:

**DEFENDANT ZAHARIA BARBER'S SENTENCING MEMORANDUM**

on the interested parties in this action, as well as by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

(1)
JEFFREY SPIVAK
Assistant United States Attorney
2500 Tulare Street, Suite 4401
San Diego, CA 93721
Tel.: (559) 497-4073
Email: Jeffery.spivak@usdoj.gov

(2) ROSS A. MICHELI
United States Probation Officer
Fresno, CA 92101
(559) 499-5723
ross_micheli@caep.uscourts.gov__

I declare that under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

DATED: September 29, 2025       By: _Claire Ginsbach_
Signed by:
184044945953437...
CLAIRE GINSBACH

EXHIBIT "A"

◎ Outlook

**Zahria Barber - Character Reference Letter**

From Kenya Barber <kenyabb74@yahoo.com>

Date Tue 8/19/2025 6:30 PM

To   davecpaquin@hotmail.com <davecpaquin@hotmail.com>

Honorable Thurston,

I am writing this letter in regard to a character reference pertaining to my daughter, Zahria Barber.

Zahria is a very loving and caring person. She makes it a point to show her friends and family how much she cares for them and what an important part of her life they are. She is passionate and loves hard.

Zahria is a very independent young lady and a hard worker. She is driven. She is an intelligent person who graduated high school and continued her education and graduated college. She took it upon herself to seek employment after graduation in Las Vegas and has been dedicated to maintaining her independence and work career despite being so far away from her home. She works hard to make a living for herself, to be on her own and take care of herself.

Zahria is a loving daughter as well as a loving sister to her six sisters, little brother, and her new niece. Her siblings look up to her and she has been a good role model for them. They can look at Zahria and see that hard work, dedication and persistence pays off. She never hesitates to show her family how important they are to her. She always calls home to check on me and everyone else. This shows how loving and compassionate Zahria is.

I am extremely proud of my daughter. She is a good person. She works hard and does what she is supposed to do. She may have made a mistake, as we all have done at one time or another, but she is not a bad person, not a criminal. I love her with all my heart and then some. She is special to a lot of people.

Thank you for your time and consideration.

-Kenya Barber

Damarqueon McClenningham

123 Gandalf St, APT 101

Rock Hill, SC, 29732

damarqueonmcclenningham@gmail.com

803-524-3318

August 8, 2025


The Honorable Thurston


RE: Character Reference for Zahria Barber


Dear Honorable Thurston,

My name is Damarqueon McClenningham, and I am a Grounds Maintenance Tech for the City of Rock Hill. Zahria is my sister-in-law whom I have known for 10 years. I am writing to provide insight into Zahria's character in hopes that it may assist the court in its decision.

Zahria is my wife's younger sister. She has always been so sweet and helpful. She checks on her family daily and always wants to make sure everyone is doing well. Zahria has a positive attitude and cares deeply for those around her. She helped host and plan our baby shower and was even with us after the birth of our child to help care for us and the baby. Zahria works hard and is very creative. She loves to make homemade gifts and personalize them, putting in lo s of time, thought and effort to make each person feel loved and appreciated.

Although Zahria has made a mistake, she is taking responsibility for her actions and is committed to growing and improving each day. She consistently demonstrates responsibility and a genuine concern for her family, friends, and community.

I truly believe that Zahria will continue to make positive contributions to her family and community. I fully respect any decision the court makes but I hope that you take her good character and qualities, witnessed by me, into consideration.

I am available to confirm the facts stated in this letter. Please feel free to contact me at 803-524-3318 or damarqueonmcclenningham@gmail.com if you require any further information. Thank you for your time.

Sincerely,

Damarqueon McClenningham

Kenisha McClenningham

123 Gandalf St, APT 101

Rock Hill, SC, 29732

Barberk9@winthrop.edu

803-448-5960

August 1, 2025

The Honorable Thurston

RE: Character Reference for Zahria Barber

Dear Honorable Thurston,

My name is Kenisha McClenningham, and I am Hospital Laboratory Operations Manager in North Carolina. I have known Zahria for all her life in my capacity as her oldest sister. I am writing to provide insight into Zahria's character in hopes that it may assist the court in its decision.

I have known Zahria to always be compassionate, hardworking, and extremely caring. Although I am the oldest, Zahria has always looked out for me and all our siblings, making sure we are all doing well and always offering to help anyone if needed. She has always been there for me and most recently during the birth of my daughter she was there to not only make sure that the baby was taken care of, but to also make sure that my husband and I got much needed food and rest.

Ever since we were little Zahria has always wanted to make a difference for people. We were both Girl Scouts, but Zahria continued to serve her community and the troop by volunteering in the area right up to college. Growing up, she participated in a lot of community service like volunteering at our local library, at the Women and Children's center Pilgrims Inn, and with the City of Rock Hill. She participated in many community improvement events like Myrtle Beach's "Beach Sweep" to help clean the beaches, in food drives by serving meals at the Family Promise of Rock Hill, and volunteered at local blood drives, Youth Service Day, and Teacher Appreciation Week events throughout our childhood. My sister has a big heart and has always been committed to helping people. She always maintained good grades, actively participated in school events, and was members of both the middle and high school band.

After high school, Zahria went on to college to complete her degree in Hospitality Management. She maintained great grades through college and even studied abroad for a year. On top of maintaining good grades, she held steady employment and still found time to care for and check on her family. Although she lives far from us now, she still calls and checks on us daily to make sure we are all well. Zahria is extremely funny and is always in a good mood. We always look forward to her visiting us to make us smile and laugh and not to mention getting a chance to eat some of her delicious chicken tacos.

Although Zahria has made a mistake, she has taken accountability for her actions and is focusing on learning from those mistakes to become a better person. Zahria continues to work hard and perform well at her job and is improving her creativity by taking on new hobbies like cooking, sewing and making jewelry. She is making new friends and thriving. Zahria is and continues to be an integral part of our family and her community, always displaying compassion and providing comfort and care. Her actions and attitude show that she is not defined by this incident alone and is willing to put forth the work and effort into her commitment to make amends. Zahria has a good heart and a kind soul. She continues to care for those around her, putting smiles on everyone's faces.

I respect any decisions made by the court system, but I truly believe that Zahria is capable of positive change and will continue to contribute positively to society.

Please feel free to contact me at 803-448-5960 or barberk9@winthrop.edu if you require any further information. I am also available to confirm the facts stated in this letter as necessary. Thank you for your time and consideration.


Sincerely,

Kenisha McClenningham

EXHIBIT "B"

# Zahria Barber

Las Vegas, NV | Zkbarber26@gmail.com | 803.487.7128

Website- https://zahbabe001.wixsite.com/mysite | LinkedIn- https://www.linkedin.com/in/zahria-barber

## *Project Coordinator & Digital Marketer*

Adept at managing the full project life cycle for content creation and website development, while ensuring alignment with strategic business goals. Proven ability to lead cross-functional teams, implement process improvements, & deliver high-impact solutions that drive client satisfaction. Successfully managed projects to increase brand visibility, enhance SEO performance, and optimize user experience to achieve measurable results in e-commerce and digital marketing. Eager to leverage a diverse skill set in project management, client relations, and technical execution.

## CORE COMPETENCIES

Digital Marketing
Copywriting, Blogging
CRM & AI Proficiency

Project Management
SEO, Keyword Research
Graphic Design

Content Design & CMS
Website Design & Management
Social Media Marketing

## SKILLSETS

**Project Management & CRM:** Salesforce Lightning, Salesforce Service Cloud, TaskRay, Wrike, Notion, HubSpot
**Content Management Systems:** Dealer.com, ShowIt, WordPress, DealerOn, DealerInspire, WIX, Shopify
**Technical Skills & Digital Marketing Software:** SEMrush, Yoast SEO, SharePoint, Microsoft Office; Google Suite, Adobe Illustrator, Adobe Photoshop, Adobe Acrobat, HTML/CSS, SEO, UX/UI Optimization, CapCut, Canva

## WORK EXPERIENCE

**DealerOn** — Project Coordinator (Contractor) — Mar 2025-Aug 2025
- Spearheaded process improvements & project logistics by streamlining workflows across multiple cross-functional teams i.e. design, data support, IT, etc. utilizing Kanban and scrum methodologies.
- Led the implementation of 20+ dealership websites & product package launches that generated $80k+ in Sales Line-Item Revenue with varying timelines with Salesforce Lightning & Service Cloud
- Directed B2B stakeholder communications regarding milestone reviews, to ensure clear alignment with project goals for clients and strict automotive OEM standards and guidelines.

**Haute Melanin Culture** — Owner — Apr 2022-Jul 2025
- Developed and executed brand awareness based on target audience research, buyer personas, copy writing, and blog content creation.
- Directed website content migration onto Shopify e-commerce catalog for 60+ SKUs to reduce business expenses by 20%.
- Leveraged 60% increase in followers and an 80% increase in TikTok likes in one year utilizing AI, video editing, graphic design, social media trends, and SEO.

**Swickard Auto Group** — Interactive Content Specialist — Mar 2023-Apr 202
- Coordinated and executed an auto group-wide trade appraisal campaign, leveraging research, landing page creation, and SEO strategies to increase pre-owned acquisition application submissions by 6%.
- Managed 50,000+ internal & external links for 18 websites. Designed 40+ landing pages across 3 different CMS platforms to enhance functionality & user experience by 7% through CSS & HTML.
- Oversaw 9+ website digital marketing content management projects daily with internal & external partners, ensuring adherence to 10 distinct brand compliance standards.

Brands- Chevrolet; GMC; Buick; Audi; Volvo; Volkswagen; Toyota; Honda; Acura; Cadillac

**Digital Marketing Agency Model**                    **Content Strategy Lead**                    **Dec 2021-Sep 2022**

- Collaborated with a team of digital marketing partners to establish a digital marketing agency, defining mission, expertise, tone, and target audience.
- Improved website traffic and brand visibility by designing and executing four multi-channel campaigns (email, social media, SEO, SEM) for small businesses.
- Increased workflow 15% by developing a content calendar for clients' social media platforms.

## EDUCATION

University of Las Vegas, Digital Marketing Professional Certificate (Sep 2022)
University Of South Carolina, Bachelor of Science, Major: Hospitality Management (May 2019)